UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| CHRISTOPHER CAULLEY, in his capacity as INDEPENDENT EXECUTOR OF THE ESTATE OF KATHERINE C. BERG, DECEASED, | § § § § § | |
| *Plaintiff,* | § § | Civil Action No. 3:20-CV-03077-X |
| v. | § § | |
| INTERPRISE/SOUTHWEST INTERIOR & SPACE DESIGN, INC., | § § § § | |
| *Defendants.* | § | |

## **MEMORANDUM OPINION AND ORDER**

Christopher Caulley, as Independent Executor of the Estate of Katherine C. Berg, deceased, sued Interprise/Southwest Interior & Space Design, Inc. (Interprise) in state court alleging that Interprise defaulted under the terms of a Junior Subordinated Promissory Note. Interprise timely filed a Notice of Removal [Doc. No. 1]. The Estate filed a Motion to Remand [Doc. No. 4]. For the reasons below, the Court **GRANTS** the motion to remand.

### I. Factual Background

Katherine Berg founded Interprise, an interior design firm serving commercial tenants and landlords in North Texas, in 1981. On December 14, 2011, Berg agreed to sell 100% of her shares of Interprise common stock—constituting 100% of the outstanding common stock shares—to Interprise for $2.85 million according to the terms of a Junior Subordinated Promissory Note (the Note). In turn, Interprise

1

financed the sale of 100% of its common stock shares to the employee stock ownership plan (the Plan).  Interprise created the Plan on January 1, 2011.  The parties do not dispute that the Employee Retirement Income Security Act (ERISA)[1] governs the Plan and its administration.

In relevant part, the Note required that (1) Interprise make monthly payments of principal and interest amortized over ten years, (2) Berg enter into an employment agreement with Interprise for a period of five years, and (3) the Plan agreed to purchase the shares of common stock.  Berg's employment agreement, also dated December 14, 2011, named Berg the Chairperson of the Board of Directors for Interprise for as long as the Note remained outstanding.

It is undisputed by the parties that payments on the Note were irregular for several years prior to Berg's death in April of 2019.  The Estate alleges that payments ceased following Berg's death.  The Estate notified Interprise that it was in default under the terms of the Note on August 19, 2019 and filed suit in state court on September 4, 2020.  Interprise filed a notice of removal to this Court on October 8, 2020, and the Estate filed a motion to remand on November 6, 2020.

## II. Legal Standards

"[A]ny civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed by the defendant or the defendants, to the district court of the United States for the district and division

---

[1] 29 U.S.C. § 1001(b).

2

embracing the place where such action is pending."[2] The removal statutes are strictly construed, and any doubts are resolved in favor of remand.[3]  Accordingly, "[t]he removing party "bears the burden of showing that federal jurisdiction exists, and that removal was proper."[4]  When, as here, the parties are non-diverse, "the propriety of removal turns on whether the case falls within original 'federal question' jurisdiction under 28 U.S.C. § 1331."[5]  District courts have original federal question jurisdiction over cases "arising under the Constitution, laws, or treaties of the United States."[6]

Under the well-pleaded complaint rule, a defendant may not remove "on the basis of a federal defense, including the defense of pre-emption, even if the defense is anticipated in the complaint."[7]  However, there is an exception to the well-pleaded complaint rule that applies when Congress "so completely pre-empt[s] a particular area that any civil complaint raising this select group of claims is necessarily federal in character."[8]

### III. Analysis

First, Interprise argues that the Court has original jurisdiction because the Estate's claims "invoke traditional ERISA entities' relationships and clearly relate to

---

[2] 28 U.S.C. § 1441(a).

[3] *See Gasch v. Hartford Accident & Indem. Co.*, 491 F.3d 278, 281–82 (5th Cir. 2007).

[4] *Manguno v. Prudential Prop. & Cas. Ins. Co.*, 276 F.3d 720, 723 (5th Cir. 2002).

[5] *Franchise Tax Bd. v. Constr. Laborers Vacation Tr.*, 463 U.S. 1, 8 (1983).

[6] 28 U.S.C. § 1331.

[7] *Franchise Tax Bd.*, 463 U.S. at 8.

[8] *Metro. Life Ins. Co. v. Taylor*, 481 U.S. 62, 63–64 (1987).

the ERISA plan."[9]  Here, Interprise is referring to the standard for ERISA conflict preemption, which applies to "any and all State laws insofar as they now or hereafter relate to any employee benefit plan."[10]  The Fifth Circuit has identified two unifying characteristics for ERISA conflict preemption: (1) state laws addressing areas of exclusive federal concern, and (2) claims directly affecting relationships between ERISA entities.[11]

In short, Interprise argues that the Estate's claim affects ERISA parties because the Plan purchased the common stock shares through an "integrated transaction" in which Mrs. Berg served a "dual role as fiduciary and party in interest."[12]  Interprise points to the general federal concern of regulating employee-benefit programs but does not discuss any specific concern affected by the Estate's claim.[13]  Irrespective of their potential merits, these arguments have no bearing on this Court's jurisdiction.  The Fifth Circuit has held that complete preemption under ERISA is required for removal—not conflict preemption.[14]

---

[9] Doc. No. 5 at 1.

[10] 29 U.S.C. 1144(a).

[11] *Memorial Hosp. Sys. v. Northbrook Life Ins. Co.*, 904 F.2d 236, 245 (5th Cir. 1990).

[12] Doc. No. 5 at 1.

[13] *See id.* at 8.  *See also Hobson v. Robinson*, 75 F. App'x 949, 952 (5th Cir. 2003) ("Congress enacted ERISA to 'protect . . . the interests of participants in employee benefits plans and their beneficiaries . . . by establishing standard of conduct, responsibility, and obligation for fiduciaries of employee benefit plans, and by providing appropriate remedies.'" (quoting 29 U.S.C. § 1001(b)) (alterations in original)).

[14] *See Arana v. Ochsner Health Plan*, 338 F.3d 433, 440 (5th Cir. 2003) ("We thus hold that only complete preemption of a claim under ERISA § 502(a) is required for removal jurisdiction; conflict preemption under ERISA § 514 is not required").  Conflict preemption is a federal defense, which cannot form the basis for removal.  *See Swenson v. United of Omaha Life Ins. Co.*, 876 F.3d 809, 811 (5th Cir. 2017) (explaining that conflict preemption is "a federal defense that can be asserted when a federal law conflicts with a state law."); *Arana v. Oschser Health Plan*, 302 F.3d 462, 474 (reasoning that an argument that a state law cause of action is subject to conflict preemption under ERISA is "a

4

Interprise attempts to allay this distinction, insisting that when a claim satisfies conflict preemption it nearly always satisfies complete preemption.[15]  "Nearly always" is a lot like "pretty sure."  As Tracey Morgan made clear on behalf of Rocket Mortgage, "certain is better."[16]  The distinction between conflict and complete preemption is certain and crucial.  Only complete preemption would give this Court federal question jurisdiction over the Estate's claim.  Thus, all arguments applying the conflict preemption standard are erroneous.

Second, Interprise argues that the Estate's claims fall within the scope of ERISA's civil enforcement scheme.[17]  Here, Interprise correctly states the Supreme Court's standard for complete ERISA preemption: "Congress has clearly manifested an intent to make causes of action within the scope of the civil enforcement provisions of § 502(a) [29 U.S.C. 1132(a)] removable to federal court."[18]  However, Interprise omits the two-step test. Complete preemption applies when (1) the plaintiff could have brought the claim under 29 U.S.C § 1132(a), and (2) the defendant does not have an independent legal duty.[19]

---

defense to Arana's [state law] claim, and not a basis for converting Arana's state law claim to one arising under federal law. . . OHP accordingly must assert this defense, as well as any other defense it may have to Arana's [state law] cause of action, before the state court on remand."), opinion vacated on other grounds, 338 F.3d 433.

[15] *See* Doc. No. 5 at 8 (quoting *E.I. Dupont De Nemours & Co. v. Sawyer*, 517 F.3d 785, 799 n.10 (5th Cir. 2008)).

[16] Rocket Mortgage, *Certain is Better*, YOUTUBE (Feb. 7, 2021), https://www.youtube.com/watch?v=RWHT3Xt7qfw.

[17] *See id.* at 9.

[18] *Metro. Life Ins. Co.*, 481 U.S. at 66.

[19] *Aetna Health Inc., v. Davila*, 542 U.S. 200, 210 (2004).

For step one, Interprise cites section 1132(a)(3), which authorizes participants, beneficiaries, and fiduciaries to bring claims to enjoin acts that violate the plan's terms and to receive equitable relief.[20] Interprise alleges that Mrs. Berg was a fiduciary when the Plan was created and funded, and that the Estate is requesting an equitable remedy. Yet, even assuming that Mrs. Berg was a fiduciary as alleged, Interprise fails to demonstrate how the Estate could have brought its claims under this provision. The Estate is not seeking to enjoin an act that violates the subchapter or a term of the Plan, nor is the Estate seeking equitable relief for such a violation. Notably, Interprise makes no reference to any *term of the plan* connected to the Estate's claim. Inteprise does allege that Mrs. Berg violated the ERISA provision against prohibited transactions, as discussed in greater detail below. But Interprise fails to demonstrate how *the Estate* could have brought its claim under section 1132(a)(3) as a result of *Mrs. Berg's* alleged violation.

Moreover, Interprise does not address the independent-legal-duty step in the analysis. Instead, Interprise implicitly argues that no independent legal duty exists because the integrated transaction was prohibited under ERISA.[21] ERISA does provide an enforcement provision for claims of breach of fiduciary duty.[22] Further, Interprise correctly notes that the fiduciaries carry the burden of proving that

---

[20] 29 U.S.C. § 1132 (a)(3) (providing that a civil action may be brought "by a participant, beneficiary, or fiduciary (A) to enjoin any act or practice which violates any provision of this subchapter or the terms of the plan, or (B) to obtain other appropriate equitable relief (i) to redress such violations or (ii) to enforce any provision of this subchapter or the terms of the plan").

[21] *See* Doc. No. 5 at 13–14; *see also* 29 U.S.C. §§ 1106, 1108 (outlining prohibited transactions and the corresponding exceptions).

[22] *See* 29 U.S.C. § § 1132(a)(2), 1109 (providing that a civil action may be brought for breach of fiduciary duty by the Secretary, a participant, a beneficiary, or a fiduciary).

adequate consideration was paid when an ERISA plan purchases an employer's stock.[23] If this were a state law claim *against* the Estate, the allegation that Mrs. Berg engaged in a prohibited transaction might be relevant to the analysis. But the fiduciary bears the burden of proof as a defendant to a breach of duty claim, not a plaintiff. Complete preemption may "recharacterize a state law complaint" into a federal claim,[24] but it does not transpose the parties.

Finally, Interprise argues that the preemption analysis is not altered simply because no ERISA remedy exists for the plaintiff's claim. Again, Interprise ignores the distinction between conflict preemption and complete preemption.[25] The absence of an ERISA remedy does not alter the preemption analysis under the "relates to" standard, but the claim is not removable to federal court unless the Estate could have brought it under section 1132(a).[26]

The Court finds that Interprise failed to meet its burden of establishing federal subject matter jurisdiction through complete preemption under ERISA. However, the Court does not find that the action was removed without an objectively reasonable

---

[23] *See Donovan v. Cunningham*, 716 F.2d 1455, 1467–68 (5th Cir. 1983) (explaining the defendants charged with breach of fiduciary duty under ERISA § 404, 29 U.S.C. § 1104, must show good faith: "ESOP fiduciaries will carry their burden to prove that adequate consideration was paid").

[24] *Metro. Life Ins. Co.*, 481 U.S. at 64.

[25] *See* Doc. No. 5. at 16 (quoting *Corcoran v. United HealthCare Inc.*, 965 F.2d 1321, 1333 (5th Cir. 1992)). The statement that Interprise quotes refers to the express preemption provision of ERISA under 29 U.S.C § 1441(a). As previously noted, the Fifth Circuit clarified in *Arana* that only complete preemption under ERISA's civil enforcement scheme satisfies federal question jurisdiction.

[26] Interprise further argues that the Estate's petition includes fiduciary duties extrinsic to the Note, and that Mrs. Berg attempted to reduce the amount of the Note prior to her death. These arguments do not warrant further discussion. Mrs. Berg's purported role as a fiduciary is not sufficient to bring the Estate's claim within the scope of 29 U.S.C. § 1132(a), and the State court is competent to adjudicate the claim.

basis. Accordingly, the Court **GRANTS** the motion to remand and **DENIES** the Estate's request for just costs and actual expenses, including attorney's fees.

## IV. Conclusion

For the forgoing reasons, the Court **GRANTS** the motion to remand. The Court **REMANDS** the case to 44th Judicial District Court of Dallas County, Texas.

**IT IS SO ORDERED** this 10th day of June, 2021.

_____
BRANTLEY STARR
UNITED STATES DISTRICT JUDGE